UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE CAREY,<br><br>                                    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                                    Defendant. | Case No.:  16cv2891-CAB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 12, 13]** |

   Plaintiff Leslie Carey brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for disability insurance benefits.  ECF No. 1.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 12 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF Nos. 13-1 and 14-1[1] ("Def.'s Mot.")], and Plaintiff's Reply in Support of her Motion for Summary Judgment and an Opposition to Defendant's Cross-Motion for

---

[1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the Docket as two documents, numbers 13 and 14.  The contents of the documents are the same so, for clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely "Def.'s Mot." and will cite to ECF No. 13-1.

1

Summary Judgment [ECF Nos. 15 and 16[2] ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL BACKGROUND

On October 19, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on July 8, 2015. See Administrative Record ("AR") at 147-58. The claim was denied initially on December 9, 2015, and upon reconsideration on February 24, 2016, resulting in Plaintiff's request for an administrative hearing. Id. at 72-75, 78-82, 88-89.

On August 24, 2016, a hearing was held before Administrative Law Judge ("ALJ") William Mueller. Id. at 30-49. Plaintiff and an impartial vocational expert ("VE"), Erin Welsh, testified at the hearing. See id. In a written decision dated September 2, 2016, ALJ Mueller determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 19, 2015[3], through the date of the ALJ's decision. Id. at 13-23. Plaintiff requested review by the Appeals Council. Id. at 7-9. In an order dated September 28, 2016, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-6.

On November 25, 2016, Plaintiff filed the instant action seeking judicial review by the

_____

[2] Plaintiff's Reply in Support of her Motion for Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment appear on the Docket as two documents, numbers 15 and 16. The contents of the documents are the same so, for clarity, the Court will refer to Plaintiff's Reply in Support of her Motion for Summary Judgment and an Opposition to Defendant's Cross-Motion for Summary Judgment as one document, namely, "Pl.'s Reply" and will cite to ECF No. 15.

[3] The ALJ errantly listed September 24, 2015 as the date Plaintiff's application was filed. See AR at 22, 147-58.

federal district court.  <u>See</u> ECF No. 1.  On April 4, 2017, Plaintiff filed a motion for summary judgment alleging the following errors: (1) the ALJ improperly found Plaintiff's mental health condition to be non-severe and (2) the ALJ erred in assessing Plaintiff's credibility.  <u>See</u> Pl.'s Mot. at 11-14.  Plaintiff asks the Court to reverse the final decision of the Commissioner and remand the case for payment of benefits, or, alternatively, remand the case to the Social Security Administration for further proceedings.  <u>Id.</u> at 14-15.  On April 28, 2017, Defendant filed a timely cross-motion for summary judgment asserting that the ALJ properly found Plaintiff's mental health condition to be non-severe and properly assessed Plaintiff's credibility.  <u>See</u> Def.'s Mot. at 3-8.  On May 19, 2017, Plaintiff timely filed a reply in support of her motion for summary judgment and opposition to Defendant's cross-motion for summary judgment.  Pl.'s Reply. Defendant did not file a reply.  <u>See</u> Docket.

## <u>DISABILITY HEARING</u>

On August 24, 2016, Plaintiff, who was represented by counsel, appeared at the hearing before the ALJ.  <u>See</u> AR at 30-49.  Plaintiff was fifty-six years old at the time of the ALJ's hearing. <u>Id.</u> at 34.  During the hearing, the ALJ noted that Plaintiff was alleging disability in light of anxiety and Degenerative Disc Disease, which causes Plaintiff back and leg pain.  <u>See id.</u> at 15, 41.

The ALJ questioned Plaintiff regarding her work experience and alleged disability.  <u>Id.</u> at 34-37.  Plaintiff testified that she has a GED and had worked as a manager of a doughnut shop, as a waitress and server, as a home health care provider, and as a Certified Nursing Assistant ("CNA").  <u>Id.</u> at 34-37.  Plaintiff stated that her anxiety, back pain, and leg pain prevent her from working.  <u>Id.</u> at 41.

Plaintiff stated that she has had anxiety since she was fifteen years old and generally has anxiety at night three to four times a week, but also experiences anxiety during the day.  <u>Id.</u> at 40-41.  Plaintiff testified that she has severe anxiety when she tries to sleep at night causing her to "literally choke on [her] own saliva . . . ."  <u>Id.</u> at 41.  Plaintiff also stated that driving gives her anxiety and that, as a result, she drives "maybe five times a year."  <u>Id.</u> at 37.  Plaintiff

stated that her anxiety negatively impacted her career because driving clients around was part of her job requirements as a CNA. Id. As a result, Plaintiff explained that her husband or friends drive her around. Id. Plaintiff testified that she was prescribed Clonazepam to treat her anxiety. Id. at 40. At one point, Plaintiff testified that she was prescribed .05 milligrams of Clonazepam twice a day as needed, but her doctor upped her dose to one milligram of Clonazepam twice a day. Id. Plaintiff explained that in March of 2016, she told her doctor to lower the dose because she knew Clonazepam is addictive and the dosage was too high. Id.

Plaintiff testified that on a scale of one to ten, her back pain is typically at about a seven and a half and that she takes ibuprofen to relieve the pain, which lowers her pain level to a five. Id. at 41-42. Plaintiff explained that she can sit for ten to fifteen minutes and that she is constantly moving from one side to the other to prevent her pain from radiating down her sides while sitting. Id. at 42. Plaintiff stated that she can stand for ten minutes before experiencing pain. Id. at 43. Plaintiff also explained that her pain exacerbates her anxiety. Id.

Plaintiff explained that she lives with her husband, does light housekeeping and cooking, can dress herself, feed herself, do the dishes and make herself a cup of coffee. Id. at 37, 39. Plaintiff stated that she cannot do the laundry because she cannot carry the laundry in a laundry basket up or down stairs and cannot transfer "heavy" wet items out of the laundry machine to the dryer. Id. at 38. She testified that bending over and lifting heavy items is painful. Id. at 37-38. Plaintiff also stated that she cannot go to the grocery store by herself because her anxiety prevents her from driving and she cannot carry grocery bags. Id. at 39.

Ms. Welsh, a VE, also testified at Plaintiff's administrative hearing. Id. at 44-49. She classified Plaintiff's past relevant work as a "food server," Dictionary of Occupational Titles ("DOT") 311.477-030, light with an SVP of 3, semi-skilled, and "CNA," DOT 355.674-014, medium with an SVP of 4, semi-skilled. Id. at 45. Ms. Welsh opined that a hypothetical person of Plaintiff's age, education, and work experience who was capable of medium work and limited to frequent postural activities and only occasional climbing of ladders, ropes, and scaffolds could perform Plaintiff's past work. Id. at 45-46. She also opined that there would be a significant

4

number of jobs that a hypothetical person of Plaintiff's age, education, and work experience who was capable of medium work, but could only engage in frequent postural activities, only occasionally climb ladders, ropes, and scaffolds, but was further limited to non-public, simple, routine tasks with occasional contact with coworkers and supervisors could perform.  Id. at 46.  Ms. Welsh opined that such a person would be able to perform the following jobs: "laundry worker," DOT 361.685-018, medium with an SVP of 2, with 44,000 jobs nationally; "automobile detailer," DOT 915.687-034, medium with an SVP of 2, with 54,000 jobs nationally; and "hand packager," DOT 920.587-018, medium with an SVP of 2, with 42,000 jobs nationally.  Id.

Plaintiff's attorney asked whether the laundry worker job would require any amount of significant bending.  Id. at 47.  Ms. Welsh answered that it would require "occasional stooping, which is bending at the waist" for about two and a half hours throughout the day.  Id.  Plaintiff's attorney then asked Ms. Welsh what the stooping requirements are for the other two jobs.  Id.  Ms. Welsh testified that the hand packaging job requires no stooping and the auto detailer job required frequent stooping of about two and a half hours to six hours of stooping.  Id.  Plaintiff's attorney then asked whether any of the three jobs would be impacted by a person who must sit for fifteen minutes and then stand for fifteen minutes.  Id. at 48.  Ms. Welsh testified that such a person would not be able to perform medium work as described by the ALJ's hypotheticals.  Id.

## ALJ's DECISION

On September 2, 2016, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  Id. at 13-23.  Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of Plaintiff's application for disability insurance benefits.  Id. at 15.  He then considered all of Plaintiff's medical impairments and determined that Plaintiff's Degenerative Disc Disease was "severe" and Plaintiff's anxiety was "nonsevere" as defined in the Regulations.  Id. at 15-16.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  Id. at 18.  The ALJ concluded that Plaintiff's residual functional capacity ("RFC") permitted her to:

> perform medium work as defined in 20 CFR 416.967(c) except [Plaintiff] is able to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently.  She is able to sit, stand or walk up to six hours in an 8-hour workday.  [Plaintiff] is able to perform tasks where there is a frequent requirement for bending, stooping, crouching, crawling, kneeling, climbing and balancing.  However, that said, [Plaintiff] is able to perform tasks where there is a requirement for climbing ropes, ladders or scaffolds on an occasional basis.

Id.  The ALJ then found that Plaintiff has no past relevant work.  Id. at 21.  The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform  and that Plaintiff has not been under a disability as defined in the Social Security Act since the date her application for disability was filed.  Id. at 21-22.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where the evidence can reasonably be construed to support more than one rational interpretation, the

court must uphold the ALJ's decision.  See Batson, 359 F.3d at 1193.  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson, 359 F.3d at 1193.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff alleges that the ALJ erred in finding that her mental health impairment was non-severe at Step Two of the five-step sequential evaluation process and in evaluating Plaintiff's testimony.  Pl.'s Mot. at 11-14; Pl.'s Reply at 1-3.  Defendant contends that the ALJ's decision is supported by substantial evidence, and thus should be affirmed.  Def.'s Mot. at 3-8.

## I.     Lack of Evidence Establishing Severe Impairment

Plaintiff argues that the ALJ's finding that Plaintiff's mental health condition is non-severe is erroneous and not supported by substantial evidence.  Pl.'s Mot. at 11-12.  Pursuant to Social Security regulations, the ALJ is required to follow a five-step sequential evaluation process for determining whether a claimant is disabled.  See C.F.R. § 416.920(a).  At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of Plaintiff's application for Social Security disability insurance benefits.  AR at 15.  This finding is not contested.

At the second step, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(ii).  The inquiry at Step Two is a de minimis screening "to dispose of groundless claims."  Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (citation omitted).  A claimant

7

is required to make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. See 20 C.F.R. § 404.1520(c), 416.920(c). The burden of proof is on the claimant to establish a medically determinable severe impairment. Id.; see also Uy v. Colvin, 2015 WL 351438, at *8 (E.D. Cal. Jan. 26, 2015).

Here, the ALJ found that Plaintiff's anxiety satisfies the first element, but did not satisfy the second. AR at 16. The ALJ stated that Plaintiff's "medically determinable mental impairment of anxiety does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." Id. Plaintiff contests this finding. See Pl.'s Mot. at 11; Pl.'s Reply at 1-3.

A mental impairment is severe if it causes episodes of decompensation and imposes more than mild limitations on the claimant's activities of daily living, social functioning, and concentration, persistence, or pace. 20 C.F.R. § 404.1520a(c), (d)(1); see 20 C.F.R. § 404, subpt. P, app. 1, § 12.00(C) (stating that "[a]ctivities of daily living include . . . cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, [and] caring appropriately for . . . grooming and hygiene"; "[s]ocial functioning" refers to the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals," such as "family members, friends, neighbors, grocery clerks, landlords, or bus drivers"; "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work adaptive functioning" that "would ordinarily require increased treatment or a less stressful situation (or a combination of the two)"). "The mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe." Id. Further, a medical problem which can be controlled by medication is not severe. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for the

purpose of determining eligibility for SSI benefits.").

In this case, the ALJ carefully reviewed all of the medical records and considered the four broad functional areas set forth in the disability regulations for evaluating mental disorders and concluded:

> [Plaintiff's] medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, [and, therefore,] is nonsevere.

AR at 17.

### 1.     The Objective Medical Record

Plaintiff asserts that the medical record clearly shows she has a severe mental impairment because she "was consistently diagnosed with depression, anxiety, and/or panic disorder." Id. at 11; Pl.'s Reply at 2-3.  Plaintiff's argument overlooks too much of the record.  A chronological review of the objective medical record shows that Plaintiff's mental health symptoms fluctuated, but that her symptoms improved and were largely, but not completely, controlled with medication.

On January 14, 2015, Plaintiff saw Rogelio Samorano, MD, for a psychiatric examination. AR at 298-301.  Dr. Samorano found that Plaintiff had mild depression, but was responding well to medication.  Id. at 298.  Plaintiff reported she was sleeping better and wasn't depressed, but still dealt with anxiety – particularly when commuting to work.  Id.  Dr. Samorano found Plaintiff had good hygiene, good eye contact, normal gait and station, linear thought processes, intact associations, intact memory, intact attention span and concentration, intact language, normal fund of knowledge, fair insight and judgment, and her speech was clear and of normal rate, volume and rhythm.  Id. at 299-300.  Dr. Samorano concluded that Plaintiff's conditions had improved.  Id. at 300.

On April 8, 2015, Plaintiff reported to Dr. Samorano that she "feels better when she is working," takes her medication only "as needed," and responds well to her medication.  Id. at

294. Dr. Samorano found that Plaintiff had fair insight and judgment, that her symptoms were well controlled, and that Plaintiff was functioning well. Id. at 295-96.

Plaintiff's symptoms began to increase in severity by June 19, 2015, when she had another follow-up appointment with Dr. Samorano. Id. at 290-92. Plaintiff reported a lot of extra stress and anxiety relating to a breast biopsy. Id. at 290. Plaintiff reported having anxiety attacks about every other day and that her prescription, Klonopin, was not helping. Id. In response, Dr. Samorano increased the Klonopin dosage. Id.

On July 1, 2015, Plaintiff had another follow-up psychiatric appointment with Dr. Samorano. Id. at 286-89. Dr. Samorano noted that Plaintiff's depressive and anxiety symptoms had increased due to her recent breast lump and uterus tumor biopsies and that Plaintiff had poor to fair insight and judgment. Id. at 288. Plaintiff reported that she "is so jumpy that she cannot even drive," but responds well to her medication. Id. at 286. Dr. Samorano prescribed Plaintiff Sertraline HCI to treat her increased symptoms. Id. at 288.

By Plaintiff's August 17, 2015 follow-up with Dr. Samorano, Plaintiff's symptoms still hadn't improved. AR at 282. Dr. Samorano found that Plaintiff was anxious and had poor to fair insight and judgment. Id. at 284. Dr. Samorano instructed Plaintiff to take .5 milligrams of Klonopin twice a day as needed and 5 milligrams of Zolpidem Tartrate at bedtime to treat her insomnia. Id. Dr. Samorano also told Plaintiff to stop taking Sertraline based on Plaintiff's reported side effects. Id.

By October 14, 2015, Plaintiff's condition began improving. See id. at 278-80. Plaintiff saw Dr. Samorano with complaints of panic attacks, depression, and insomnia. Id. at 278. Plaintiff told Dr. Samorano she is "better," and that her mood is improved, her sleep is well controlled, and she only uses Zolpidem as needed. Id. Plaintiff told Dr. Samorano she had just come back from visiting her daughter in the Sacramento, CA area and enjoyed spending time there and might consider moving to a more affordable location outside of Southern California. Id. Plaintiff reported her response to medication was "fair to good." Id. Dr. Samorano found Plaintiff had good hygiene, good eye contact, a normal gait and station, linear and coherent

10

thought processes, intact associations, intact memory, intact attention span and concentration, intact language, normal fund of knowledge, constricted affect, fair insight and judgment, and her speech was clear and of normal rate, volume and rhythm. Id. at 279-80. Overall, Dr. Samorano found Plaintiff's anxiety "well controlled" and noted that Plaintiff reported "feelind [sic] and functioning better." Id. at 280.

By January 6, 2016, when Plaintiff saw Kekoa C. Ede, MD, her symptoms had worsened. Id. at 336-37, 360-62. Plaintiff reported that her anxiety had increased in severity and she was "literally wak[ing] up choking on saliva" and suffering from racing thoughts. Id. Dr. Ede increased Plaintiff's Klonopan dosage. Id. at 338, 362.

On February 16, 2016, Plaintiff again saw Dr. Ede for a medication management follow-up. Id. at 357-59. Plaintiff reported having a lot of anxiety and that Clonazepam was taking an hour to work and was over-sedating her. Id. at 357. Plaintiff complained that she couldn't eat because her anxiety made her feel like her throat was closing up. See id. at 358. Dr. Ede modified her medications and recommended a follow-up appointment in three weeks. Id. at 359.

On March 4, 2016, Plaintiff followed-up with Dr. Ede. Id. at 354-56. Plaintiff reported "bad" anxiety with daily anxiety attacks. Id. at 354. Dr. Ede refused to prescribe benzodiazepines due to Plaintiff's history of Xanax and alcohol dependence and prescribed Depakote. Id. at 355-56. Plaintiff refused Depakote and became frustrated at Dr. Ede's accusations of dependence. Id. Plaintiff informed Dr. Ede she would be seeking psychiatric services elsewhere. Id. at 356.

On March 8, 2016, Plaintiff saw James H. Schultz, MD, to refill Klonopin. AR at 393-96. Dr. Schultz found Plaintiff had mild depression. Id. at 393. Plaintiff requested an Alprazolam refill and requested to see a different psychiatrist than Dr. Ede. Id. Dr. Schultz prescribed Klonopin until Plaintiff could see a new psychiatrist and instructed Plaintiff to stop taking Alprazolam. Id. at 395.

Plaintiff's symptoms began improving once she began seeing a different psychiatrist. On

March 23, 2016, Plaintiff saw Gabriel Rodarte, MD, for a psychiatric medication management follow-up. Id. at 351-53. Dr. Rodarte found that Plaintiff was responding fairly to medication and had good insight and judgment. Id. at 351, 353. Dr. Rodarte found no abnormalities and found that Plaintiff did not meet the criteria for either alcohol dependence or benzodiazepine dependence. Id. at 353. Dr. Rodarte explained that Plaintiff might have had an episode of benzodiazepine abuse decades ago, but that a low-dose of benzodiazepine would not put her at high risk. Id.

On April 5, 2016, Plaintiff saw Dr. Schultz for a follow-up psychiatric appointment regarding her anxiety. Id. at 390-92. Plaintiff reported that her anxiety was improving after her last psychiatric visit. Id. at 391.

At the initial level of Plaintiff's Disability Determination Explanation form, Psychiatrist K. J. Loomis, DO, opined after reviewing the medical evidence of record that Plaintiff's mental health impairments were non-severe because her treatment was conservative and her mental status examinations ("MSE") indicated adequate function. Id. at 54. Upon reconsideration, state agency consultant Uwe Jacobs, Ph.D., found that Plaintiff is independent in her activities of daily living and that her MSEs indicated that her mental health impairments are non-severe. Id. at 65. After reviewing the medical evidence of record, Ph.D. Jacobs opined that Plaintiff's mental health impairments are non-severe and noted that the record does show a history of anxiety, but found that while the impairment is clinically significant, there are "no more than mild work-related impairment[s]." Id. at 66. Ph.D. Jacobs did not explain what the mild work-related impairments were. See id. at 66-69.

After thoroughly reviewing the record, this Court cannot agree with Plaintiff's contention that "[i]t is clear from the record" that Plaintiff's mental health condition imposes more than minimal limitations on her ability to work. See Pl.'s Mot. at 12. Rather, as set forth above, the Court finds there is substantial evidence in the objective medical record supporting the ALJ's decision that Plaintiff's mental health impairment is non-severe. See Uy, 2015 WL 351438, at *8 (finding that the plaintiff failed to meet his burden of proving an impairment is disabling).

12

### 2. Activities of Daily Living

Plaintiff also argues the ALJ should have found her mental impairment severe because she "doesn't go shopping alone" due to her anxiety and panic disorder, and because she "stays home a lot." Id. at 12. Social Security Regulations and case law require the ALJ to rate the degree of limitation in the claimant's "activities of daily living" to evaluate the severity of a claimant's mental impairment. See 20 C.F.R. § 404.1520(a). Here, the ALJ reviewed the four broad functional areas. AR at 17; see 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.") (citation omitted).

First, the ALJ considered Plaintiff's activities of daily living and concluded she has mild limitation. AR at 17. The ALJ found that Plaintiff is largely able to take care of herself, including her personal hygiene and grooming, and that Plaintiff can perform light housekeeping, such as feeding her pets, cleaning, doing the dishes, helping to make the bed, and cooking. Id. The ALJ also noted that Plaintiff can use a cell phone and a computer. Id.

Second, the ALJ considered Plaintiff's social functioning and concluded she has mild limitation. Id. In support, the ALJ found that Plaintiff gets along well with her family and visits with them daily by telephone and computer. Id.

Third, the ALJ considered Plaintiff's concentration, persistence or pace and concluded that Plaintiff has mild limitation. Id. The ALJ noted that Plaintiff can perform multiple step tasks, like preparing meals and using a microwave, that Plaintiff uses a computer for social communication on a daily basis, and that Plaintiff's hobby of watching television daily indicates a modicum of ability to concentrate and attend on story or plot lines, or non-fiction shows. Id.

Finally, the ALJ found that Plaintiff has experienced no episodes of decompensation of an extended duration and that there is no evidence suggesting any decompensation or inpatient hospitalization or treatment for her mental impairment. Id.

The ALJ's findings are supported by the State Agency mental health consultants' assessments of Plaintiff's mental health impairment. Id. at 19, 50-59, 65-70. As discussed previously, Psychiatrist Loomis opined in a Disability Determination Explanation report at the initial level that Plaintiff's mental health impairments are non-severe due to Plaintiff's conservative treatment and adequate MSEs. Id. at 50-59. Additionally, Ph.D. Jacobs reviewed the objective medical evidence and opined in a Disability Determination Explanation report at the reconsideration level that Plaintiff's affective disorders are non-severe and that Plaintiff has only mild restrictions of activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of an extended duration. Id. at 66. Ph.D. Jacobs specifically stated that Plaintiff's "[r]ecord shows a h[istory] of anxiety . . . [which is] clinically significant[,] but no more than mild work-related impairment as assessed initially." Id. Notably, Plaintiff does not challenge the State Agency findings. See Pl.'s Mot.; Pl.'s Reply.

Further, no doctor opined in their progress notes that Plaintiff had limitations in the three areas of functioning nor stated that Plaintiff had experienced any episodes of decompensation or inpatient hospitalization or treatment for her mental impairment. See AR at 251-403. Accordingly, the state agency consultants' opinions do not conflict with the treating physicians' progress notes. See id. at 50-59, 61-70, 251-403. Plaintiff's testimony, which was properly discredited by the ALJ as discussed in the next section, is the only indication that Plaintiff has limitations in the areas of functioning. See id. at 32-49, 195-203.

Thus, Plaintiff's argument that she doesn't grocery shop alone and stays home a lot is insufficient to counter the ALJ's decision, which is supported by the State Agency mental health consultant's unopposed findings. See Hutchinson v. Colvin, 2014 WL 5847108, at *5 (D. Maine, Nov. 12, 2014) (taking the plaintiff's daily living activities into considering in determining whether the plaintiff's mental health impairment was severe).

### 3. Conclusion

Accordingly, the ALJ's determination that Plaintiff's mental health impairments are non-

severe is supported by substantial evidence, including the objective medical evidence and Plaintiff's activities of daily living. See AR at 16; see also Hutchinson, 2014 WL 5847108, at *5 (D. Maine, Nov. 12, 2014) (finding the ALJ's determination that the plaintiff's mental health impairments were non-severe based on activities of daily living and opinions of treating and examining physicians appropriate). The ALJ extensively discussed Plaintiff's objective medical record and mental impairment at steps two and four of the sequential process. AR at 16-21. In support of his finding, the ALJ cited to the State Agency mental health consultants' opinions, Plaintiff's medical record, and Plaintiff's own admission that her anxiety and insomnia appear well controlled. Id. at 21. Further, Plaintiff does not identify any treating or examining physician who opined that Plaintiff's mental conditions limited her ability to perform basic work activities or constitute a severe impairment or combination of impairments. See Pl.'s Mot.; Pl.'s Reply. The fact that no physician found Plaintiff's mental impairment to be severe supports the ALJ's determination that no such impairment exists. See Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (finding that the ALJ did not err in finding lack of impairment at Step Two where, *inter alia*, physicians made no finding of impairment, but only restated claimant's own descriptions of his problems). Finally, the Court's own review of the record found substantial evidence supporting the ALJ's decision.

## II.   **Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in discrediting her testimony. See Pl.'s Mot. at 12-14. Specifically, Plaintiff asserts that the ALJ failed to set forth the requisite specific findings to reject her testimony. See id. at 14. Defendant asserts that the ALJ properly found Plaintiff's testimony not fully credible. Def.'s Mot. at 6-8.

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation and internal quotation marks omitted). The claimant, however, need not

prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (citation and internal quotation mark omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958-59; see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959; Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

Neither party contests the ALJ's determination that Plaintiff has the following impairments: Degenerative Disc Disease and anxiety. AR at 15-16; see also Pl.'s Mot.; Pl.'s Reply; Def.'s Mot. Because the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," a finding which is

not contested by the parties, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  See AR at 19; see also Lingerfelter, 504 F.3d at 1036; Pl.'s Mot.; Def.'s Mot.  Further, neither party alleges that the ALJ found that Plaintiff was malingering.  See Pl.'s Mot.; Def.'s Mot.  As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding her symptoms.  See Lingenfelter, 504 F.3d at 1036.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  AR at 19.  The ALJ found Plaintiff not fully credible, reasoning as follows:

> As noted throughout the decision, [Plaintiff's] subjective allegations are often inconsistent with the objective medical evidence of record.  Moreover, the undersigned and the DDS noted that [Plaintiff] reported having cancer, before tests were concluded.  Because of these examples, as well as the record as a whole, the undersigned ALJ finds that [Plaintiff's] allegations and reports are somewhat inconsistent.
>
> In terms of [Plaintiff's] allegations of anxiety and back pain, the undersigned ALJ has taken [Plaintiff's] allegations into consideration.  The ALJ finds that [Plaintiff's] ability to function is greatly exaggerated.  Her medical evidence of record is mild and significantly more conservative.

Id.  The ALJ also discredited Plaintiff's Function Report and her husband's Third Party Function Report, noting inconsistencies between the two reports and with the medical evidence of record.  Id. at 20-21.  Plaintiff challenges the following reasons provided by the ALJ: (1) Plaintiff's subjective allegations are inconsistent with the objective medical evidence of record, and (2) the Function Reports are inconsistent with each other.[4]  Pl.'s Mot. at 12.  The Court will consider

---

[4] Plaintiff also argues that the ALJ did not consider Plaintiff's hearing testimony.  Pl.'s Mot. at

16cv2891-CAB (BLM)

Plaintiff's challenges below.

### 1. Objective Medical Evidence

The objective medical record provides substantial evidence to support the ALJ's decision to discredit Plaintiff's testimony.

With regard to Plaintiff's physical impairments and Degenerative Disc Disease, the ALJ determined that Plaintiff's ability to function is greatly exaggerated. Id. at 19. Plaintiff alleged that her back pain is so severe that she cannot lift a wet towel out of the washing machine, cannot sit or stand for more than 5-10 minutes, and that bending causes pain. Id. at 39, 42, 200. The ALJ rejected Plaintiff's testimony in favor of the DDS State Agency physician's assessments that Plaintiff could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds, can sit and stand for about six hours in an eight hour work-day, can stoop, kneel, crouch and crawl frequently. Id. at 19, 67-68.

In reviewing the ALJ's decision regarding Plaintiff's physical impairments, the Court notes that the ALJ considered the totality of the medical evidence of record and correctly interpreted it as generally reflecting mild or normal objective findings and treatment for mild or moderate pain. Id. at 15-16, 19. While Plaintiff did sustain a serious injury on July 8, 2015, when she was intoxicated and fell off a second story balcony that was under construction, the medical evidence shows that her pain was greatly reduced with treatment. See id. at 251. As a result of her fall, Plaintiff sustained multiple left side rib fractures that were minimally or mildly displaced, a concussion, mild probably acute compression fractures of the spine without retropulsion and with a height loss of 10%. Id. at 251-52, 259. She was admitted to the Emergency Room ("ER") on July 8, 2015, and discharged after "[e]xcellent recovery and progress" on July 11, 2015. Id. at 251-52. At her first follow-up appointment on July 21, 2015, Plaintiff complained of rib pain, but not back pain. See id. at 317-19. Dr. Schultz refilled her

---

12. This argument is without merit as the ALJ's decision specifically discussed Plaintiff's subjective allegations presented during the hearing and found them inconsistent with the medical record and Plaintiff's activities of daily living. See AR at 19-21.

prescription of Percocet for the pain and instructed Plaintiff to return in two to three weeks if her symptoms worsen or she has other problems.  Id. at 319.

Plaintiff saw Dr. Samorano for a psychiatric follow-up on August 17, 2015.  Id. at 282-84.  Dr. Samorano noted that Plaintiff stopped taking Percocet and was controlling her pain with Tylenol and/or ibuprofen.  Id. at 282.  At Plaintiff's September 22, 2015 follow-up appointment with Dr. Schultz, she complained of "on and off bilateral hip pain" and a "shooting pain that radiates to [the] middle back of [her] thigh."  Id. at 314.  She also complained of left rib pain, which she stated was improving.  Id.  Plaintiff had stopped taking ibuprofen because she was concerned about her kidneys and did not want to take narcotic pain killers because they "made her feel bad."  Id.  Dr. Schultz concluded that Plaintiff's ribs were "tender," but were resolving, and advised Plaintiff to resume taking ibuprofen to control her pain.  Id. at 316.

Plaintiff did not again seek treatment for her back, leg, or rib pain until four months later, on December 21, 2015, when Dr. Schultz asked to meet with Plaintiff regarding her request that he fill out a disability form for her.  Id. at 339-41.  The progress notes indicate that Plaintiff had continuing lower back pain that is worse when lifting heavy objects.  Id. at 339.  For the first time, Plaintiff reported that she had been suffering from bilateral hip and low back pain without neurological lower extremity symptoms for three years, but explained that her rib pain was "mostly resolved."  See id. at 339, 251-403.  The Court cannot verify Plaintiff's allegation of pain for three years because the medical record only goes back until January 14, 2015.  See AR at 251-403.  The Court also notes that Plaintiff did not complain of back or leg pain prior to the July 8, 2015 fall.  See id. at 286-326.  Further, Plaintiff's alleged onset of disability date is the date of the fall, July 8, 2015.  Id. at 147.

On December 21, 2015, Plaintiff was found to have bilateral lower paralumbar tenderness with some spasm, but had negative straight leg raising tests with tight hamstrings and her lower extremities were found to be within normal limits.  Id. at 339-41.  Dr. Schultz found that Plaintiff's rib fractures had delayed healing and assessed that Plaintiff had Degenerative Disc Disease.  Id. at 341.  To treat her Degenerative Disc Disease, Dr. Schultz referred Plaintiff to a physical

16cv2891-CAB (BLM)

therapist.  Id.  Plaintiff saw Dr. Schultz again on June 14, 2016, and complained of lower back pain.  Id. at 386-89.  Dr. Schultz noted that Plaintiff did not schedule an appointment with a physical therapist and again gave Plaintiff the information to do so.  Id. at 386.  On January 11, 2016, Plaintiff underwent a bone scan of her lumbar spine and right femoral neck.  Id. at 342.  Plaintiff was found to have normal bone mineralization.  Id.  The record does not contain any evidence indicating that Dr. Schultz opined that Plaintiff was disabled or limited in her ability to work or perform physical tasks due to her physical impairments, nor does it appear that Dr. Schultz completed a disability form on behalf of Plaintiff.  See id. at 339-41.

As such, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's claimed functional physical limitations are "greatly exaggerated" because: (1) she received very conservative medical treatment, consisting of mild pain relievers and a physical therapy recommendation, (2) she obtained relief from the pain using only Tylenol or Ibuprofen within one month after her traumatic fall, and (3) her medical care was inconsistent as she didn't return to Dr. Schultz in a timeframe indicating increased pain or physical limitation, and she failed to pursue physical therapy.  See Social Security Ruling ("SSR") 88-13 (permitting the ALJ to discount a claimant's credibility based on the type, dosage, effectiveness, and adverse side-effects of any pain medication and treatment, other than medication, for relief of pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (stating that the ALJ may consider the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment").  In addition, Plaintiff's testimony regarding her physical pain and limitations is contradicted by her doctors as Dr. Schultz did not opine that Plaintiff had any limitations on her daily activities and the DDS State Agency physicians found only mild restrictions.

In rejecting Plaintiff's allegations regarding her mental impairments, the ALJ again referenced the medical evidence as a whole and the DDS State Agency mental health consultant's opinion.  Id. at 19-20.  Plaintiff testified at the hearing that "[p]retty much every day" she is "just afraid of everything" when she is alone or in public due to her anxiety and just wants to "go home[,] . . . get comfortable and lay in . . . bed."  Id. at 43-44.  The ALJ concurred

with the State Agency mental health consultant's assessment that Plaintiff's affective disorder and anxiety were non-severe and resulted in only mild restrictions of Plaintiff's ability to function. Id. at 19-20.  As discussed in detail in Section I above, the objective medical evidence does not support the severity of symptoms and limitations claimed by Plaintiff and attributed to her mental health issues.  Rather, the objective medical records indicate that Plaintiff's mental health issues are responsive to medication, only mildly affect her daily activities, and have never caused a period of decompensation of any duration.  Similarly, Plaintiff's mental health providers did not prescribe medication or treatment indicating severe mental health issues or related life or work limitations.

In summation, the ALJ identified specific reasons for discounting Plaintiff's credibility regarding both her physical and mental symptoms by contrasting them with the medical evidence as a whole and with opinions of the DDS State Agency physician and mental health consultant.  AR at 19-20.  Thus, substantial evidence supports the ALJ's determination that the objective medical evidence of record contradicts Plaintiff's subjective allegations.  Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995)).  However, the lack of objective medical evidence contradicting Plaintiff's subjective allegations alone cannot suffice as the basis for discounting Plaintiff's testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 2.    Activities of Daily Living

Plaintiff also argues that the ALJ improperly discredited her testimony because her Adult Function Report and the Third Party Function Report, submitted by her husband, Alan Kosbab, contain two minor inconsistencies regarding her activities of daily living.  Pl.'s Mot. at 13.  In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily activities are consistent with the asserted symptoms.  See Thomas, 278 F.3d at 958-59 (citation omitted); see also SSR 96-7p, 1996 SSR WL 374186, at *3 (stating that the "adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's

statements: . . . [t]he individual's daily activities"). While the fact that a plaintiff can participate in various daily activities does not necessarily detract from the plaintiff's credibility as to her specific limitations or overall disability, "a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferrable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010). "Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting." Id. (citing Orn, 495 F.3d at 639; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); and Thomas, 278 F.3d at 959). "A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse finding when performed for a substantial portion of the day." Elizondo, 2010 WL 3432261, at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch, 400 F.3d at 680-81; Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; and Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)).

Here, the ALJ found that Plaintiff's allegations were inconsistent with her activities of daily living. AR at 21. Specifically, the ALJ noted that there were inconsistencies between the objective medical record and Plaintiff's reported level of abilities and activities and that Plaintiff omitted some functional abilities and activities in her Function Report. Id. In support, the ALJ stated that "[f]rom a psychological aspect, [Plaintiff] has no to mild restrictions and limitations pertaining to her activities of daily living." Id. at 20. This is supported by the record, which shows that Plaintiff reported being able to take care of herself, do light household chores, cook, and shop if it doesn't require her to be on her feet for more than 15 minutes. Id. at 20, 196-97. The ALJ explained that Plaintiff's ability to prepare complete meals and watch television programs suggests that she can sustain concentration, persistence, and pace. Id. at 20. The ALJ also noted that socially, Plaintiff enjoys visiting with her family daily by phone or computer. Id. at 20, 190, 199. Finally, the ALJ found no evidence that Plaintiff experienced any episodes

of decompensation of any duration.  Id. at 20.  As a result, the ALJ, concurring with the State Agency mental health consultant, found mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of any duration.  Id. at 20, 66.   Thus, the ALJ gave little weight to Plaintiff's Function Report and Mr. Kosbab's Third Party Function Report, which largely corroborated Plaintiff's report.  Id. at 21.

An ALJ must identify "*which* daily activities conflicted with *which* part of [the c]laimant's testimony," pointing to specific facts in the record to support an adverse credibility finding.  Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original).  Here, the ALJ noted that Plaintiff is "largely able to take care of herself regarding personal hygiene, and grooming," is able to "perform light housekeeping chores such as feeding her pets, cleaning, doing the dishes, helping make the bed, and cooking light or complete meals," and is able to "use a cell phone and a computer."  AR at 17.  The ALJ also determined that Plaintiff indicated a "modicum of ability to concentrate and attend on story or plot lines, or non-fiction shows" because she watches television daily and is able to perform multiple step tasks, like preparing complete meals or using a microwave.  Id.  Specifically, the ALJ noted that:

> [Plaintiff] reported that she is able to prepare sandwiches, frozen foods and even complete meals, if she can do so by not being on her feet more than 15 minutes.  By light housekeeping, she stated that she is able to clean, do the dishes, dust and help make the bed.  She reported that she no longer drives, as she cannot turn her head or back to look behind her.  She does go shopping with her husband for food, clothes and household items noting that this only takes 10-15 minutes.  She is able to count change, but reported that she has no money regarding paying bills or using accounts.  She did not answer whether she is intellectually capable of handling money matters.  [Plaintiff] reported that her hobbies include watching television and talking to her animals.  Socially, she visits with her family daily by telephone.  Regarding her medications, she stated that she takes Klonopin and Ambien, which make her tired, and Tramadol and Hydrocodone give her nausea, and dizziness.  [Plaintiff] added that her pain is not the same every day.

Id. at 20.  The ALJ noted that Plaintiff's wide-ranging daily activities are largely corroborated by

Mr. Kosbab's Third Party Function Report. Id. at 21, 186-93. The ALJ found two inconsistencies to be of particular interest: (1) Mr. Kosbab reported that Plaintiff uses the computer on a daily basis to socialize, and (2) Mr. Kosbab reported that Plaintiff can handle money. Id. at 21, 189-90.

Plaintiff argues that the ALJ's adverse credibility determination is inappropriately based on these two differences, which might not even be inconsistent with one another. Pl.'s Mot. at 13. The Court agrees with Plaintiff that the first alleged inconsistency might not actually be an inconsistency. Plaintiff explained in her Function Report that she could handle money if she had any, which does not differ from Mr. Kosbab's statement that Plaintiff has the ability to handle money. Id. at 13; see also AR at 189, 198-99. With regard to the second inconsistency, the Court acknowledges that both Plaintiff and her husband stated that Plaintiff socialized daily so the statements are not inconsistent in that respect. AR at 187-89, 199. However, as noted by the ALJ, the important inconsistency is that Plaintiff failed to acknowledge daily use of a computer, which is a skill that is transferrable to the work environment. Id. at 21; see Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1224 n.5 (9th Cir. 2008) (stating that it is the ALJ who must find that use of a computer is a transferrable skill).

Moreover, the ALJ did not base his adverse credibility determination only on the alleged inconsistencies between Plaintiff's and Mr. Kosbab's function reports. See id. at 21. Rather, the ALJ found that Plaintiff's activities of daily living, or functional abilities, were greatly exaggerated. Id. at 19-20. Plaintiff's Function Report and Mr. Kosbab's Third Party Function Report both report that Plaintiff's activities of daily living are wide-ranging. These admitted, wide-ranging activities of daily living are inconsistent with the presence of an incapacitating or debilitating medical condition. Based on the foregoing, substantial evidence supports the ALJ's finding that Plaintiff's daily activities contradict her complaints of disabling impairments and that this was a clear and convincing reason for discounting Plaintiff's credibility. See Rezendes v. Colvin, 2015 WL 3407928, at *11-12 (C.D. Cal. May 26, 2015) (finding that there was substantial evidence to discredit the claimant's testimony because the "wide-ranging" daily activities listed in the

claimant's function report and his spouse's third party function report contradicted the claimant's allegations of disabling impairments).

### 3. Plaintiff's Truthfulness

Although Plaintiff challenges the ALJ's adverse credibility determination based on the objective medical record and her activities of daily living, which were listed in the function reports, Plaintiff does not challenge the ALJ's third and final reason for discounting Plaintiff's credibility – her reputation for truthfulness. See Pl.'s Mot.; Pl.'s Reply.

Specifically, the ALJ stated: "[t]he undersigned and the DDS noted that [Plaintiff] reported having cancer, before tests were done and concluded." AR at 19. Substantial evidence in the record supports this finding. On July 8, 2015, the date of Plaintiff's fall, she told a nurse that she found out that day she had breast cancer. Id. at 253. A week before her fall, Plaintiff had a right breast biopsy done, which demonstrated benign results. Id. at 326, 401. There was no evidence of atypia or malignancy and Plaintiff was advised to have a follow-up breast MRI six months later. Id. at 326. The DDS State Agency consultant highlighted this discrepancy in opining that Plaintiff is "partially credible." Id. at 67.

The ALJ also found Plaintiff's reports concerning her alcohol usage variable and inconsistent. Id. at 16-17. Substantial medical evidence supports this finding. On March 4, 2016, Plaintiff reported she occasionally drinks and has about three to four glass of wine per week. Id. at 355. Dr. Ede found this inconsistent with her June 19, 2015 statement that Plaintiff only drinks one drink every couple of weeks. Id. Dr. Ede also noted that on June 19, 2015, Plaintiff reported having two drinks the Wednesday prior to her appointment and three glasses of wine two nights prior to the appointment, but otherwise was not drinking at all. Id. Dr. Ede reported that Plaintiff violated her controlled medication by continuing to drink alcohol. Id. at 356.

On June 28, 2016, Dr. Schultz screened Plaintiff for alcohol use. Id. at 379. Plaintiff reported that she had four or more drinks in a day only once a year, that she drinks two to four times a month, that when she drinks she typically only has one or two drinks, that she has never

had more than 5 drinks on one occasion, and that she has never been injured because she was drinking.  Id.  This contradicts reports about Plaintiff's alcohol usage on July 8, 2015.  Plaintiff was assessed with alcohol intoxication when she was admitted to the ER to treat her injuries sustained from falling off a second story balcony.  Id. at 251.  Her lab results indicated acute alcohol intoxication.  Id. at 251, 254.  On that date, Plaintiff also reported using alcohol regularly.  Id. at 253.

The ALJ properly factored Plaintiff's inconsistent statements regarding her breast biopsy and alcohol usage into his credibility analysis.  Id. at 19; see Orn, 495 F.3d at 636 (9th Cir. 2007) (stating that it is proper for the ALJ to consider evidence regarding the plaintiff's reputation for truthfulness).  Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's reputation for truthfulness adversely impacted her credibility.

### 4.  Conclusion

Given the totality of the record, the Court finds that substantial evidence supports the ALJ's conclusion that the objective medical evidence does not support Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms.  The ALJ pointed to specific evidence in the record, including progress notes with Plaintiff's primary care providers and the State Agency consultants' opinions, in identifying the objective medical evidence that undermined the Plaintiff's credibility regarding her alleged symptoms.  See AR at 15-20.  In addition, the ALJ considered the fact that Plaintiff's wide-ranging daily activities were inconsistent with a debilitating and disabling medical impairment.  Id.  Further, the ALJ considered the negative impact of Plaintiff's reputation for truthfulness in regards to her breast biopsy and alcohol usage – which Plaintiff does not dispute.  Id. at 19; see Pl.'s Mot.  Each of these reasons was supported by substantial evidence and together constitute a sufficient basis for discounting Plaintiff's impairment testimony.

### CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be

16cv2891-CAB (BLM)

**GRANTED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **August 25, 2017**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 8, 2017**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  8/11/2017

Hon. Barbara L. Major
United States Magistrate Judge

16cv2891-CAB (BLM)